IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARSH USA, INC., a Delaware )    Civ. No. 08-00149 SOM/KSC
Corporation; and MARSH & )
MCLENNAN COMPANIES, INC., )
                      )    ORDER GRANTING DEFENDANT'S
       Plaintiffs, )    MOTION TO DISMISS
                      )
      vs. )
                      )
CHAD W. KARASAKI, )
                      )
       Defendant. )
_____ )

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

I.      INTRODUCTION.

This case concerns alleged breaches of confidentiality and non-solicitation agreements entered into between Plaintiffs Marsh USA, Inc., and Marsh & McClennan Companies, Inc., (collectively, "Marsh") and Defendant Chad W. Karasaki.

On March 31, 2008, Marsh filed a Complaint seeking both injunctive relief and damages against its former employee, Karasaki, alleging a breach of three agreements and asserting claims under Hawaii statutory and common law. On April 14, 2008, Marsh filed a motion for temporary restraining order and preliminary injunction ("TRO Motion"). On April 15, 2008, Karasaki filed a motion to dismiss for improper venue or, alternatively, to transfer venue ("Venue Motion"), arguing that the most recent of the agreements being sued upon contained a forum selection clause mandating venue in New York. On April 16,

2008, Marsh filed a First Amended Complaint ("FAC"), which eliminated all references to the most recent agreement containing the forum selection clause.

The court now considers Karasaki's Venue Motion.  The court concludes that any evaluation of Marsh's claim that Karasaki has breached his obligations to Marsh requires reference to the 2007 Agreement.  Accordingly, this matter should be litigated in New York, and this case is dismissed without prejudice to Marsh's filing of an action in New York.  The court denies Karasaki's request for sanctions.

II.      FACTUAL BACKGROUND.

Marsh is an insurance brokerage firm with its principal place of business in New York City, New York.  TRO Motion at 1; FAC ¶¶ 1-2.  Karasaki joined Marsh in 1986 and worked in Marsh's Hawaii office from 1990 until recently.  In March 2005, Karasaki became Managing Director of the Hawaii office.  TRO Motion at 1.

Karasaki signed three agreements (collectively, "Agreements") containing restrictions imposed by Marsh.  In consideration for signing these agreements, Karasaki received stock grants and cash bonuses.  See id. at 1-2, 7-9.  November 25, 2003, is when Karasaki entered into the first two of these agreements, a Non-Solicitation Agreement for Participants in the Discretionary Bonus Plan ("Non-Solicitation Agreement") and a Confidentiality and Ownership Rights Agreement ("Confidentiality

2

Agreement") (collectively, "2003 Agreements").  Exs. B and C

(attached to TRO Motion).  On June 27, 2007, Karasaki entered

into a Restrictive Covenants Agreement ("2007 Agreement").

The 2007 Agreement contains a forum selection clause:

> This Agreement shall be governed by, and
> construed in accordance with, the law of the
> State of New York, without regard to its
> conflict of laws provisions.  The parties,
> being desirous of having any disputes
> resolved in a forum having a substantial body
> of law and experience with matters contained
> herein, agree that any action or proceeding
> with respect to this Agreement and the
> Employee's employment shall be brought
> exclusively in the Supreme Court of the State
> of New York, New York County, or in the
> United States District Court for the Southern
> District of New York and the parties agree to
> the jurisdiction thereof.  The parties hereby
> irrevocably waive any objection they may now
> or hereafter have to the laying of venue of
> any such action in the said court(s), and
> further irrevocably waive any claim they may
> now or hereafter have that any such action
> brought in said court(s) has been brought in
> an inconvenient forum.

2007 Agreement ¶ 12.

In addition, the 2007 Agreement contains the following

clause addressing the rights and obligations created in other

agreements:

> Neither the Employee nor the Company
> intends to waive or release the applicability
> of any other more extensive legal or
> contractual obligations the Employee may owe
> the Company at any particular time hereafter
> with regard to the subject matters of
> Sections 2 through 6.
> The obligations of the Employee under
> this Agreement shall be independent of, and

3

> unaffected by, and shall not affect, other
> agreements, if any, binding the Employee
> which apply to the Employee's business
> activities during and/or subsequent to the
> Employee's employment by the Company.  The
> obligations under this Agreement shall also
> survive any changes made in the future to the
> employment terms of the Employee, including
> but not limited to changes in salary,
> benefits, bonus plans, job title and job
> responsibilities.

2007 Agreement ¶ 9.

The 2003 Agreements do not include forum selection clauses, but both provide that the agreements "shall be construed in accordance with the laws of the State of New York."  Non-Solicitation Agreement at 2; see also Confidentiality Agreement at 5 ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed therein.").  In addition, the Non-Solicitation Agreement contains provisions that are similar to those in the 2007 Agreement, and both address non-solicitation of clients and employees.  2007 Agreement ¶¶ 2-3; Non-Solicitation Agreement at 1; see also TRO Motion at 7-9.

On March 11, 2008, Karasaki resigned from Marsh and, the following day, joined AON Risk Services, Inc., a subsidiary of AON Corporation (collectively, "AON").  TRO Motion at 2.  AON is an insurance brokerage firm headquartered in Chicago, Illinois, and, according to Marsh, is its direct and primary competitor.  Id. at 2; FAC ¶ 17.

4

On March 25, 2008, Marsh, concerned that Karasaki was violating conditions of the Agreements, sent Karasaki a letter reminding him of his contractual obligations and citing to the Non-Solicitation Agreement and the 2007 Agreement, as well as Hawaii statutory and common law.  Ex. D (attached to TRO Motion). Later that same day, Marsh sent Karasaki another letter advising him that Marsh was conducting an investigation into conduct leading up to, and subsequent to, Karasaki's resignation from Marsh.  Ex. E (attached to TRO Motion).

On March 31, 2008, Marsh filed a Complaint alleging breach of the 2003 and 2007 Agreements, as well as violations of Hawaii statutory and common law.  On April 14, 2008, Marsh filed the TRO Motion, claiming that Karasaki had breached both the 2007 Agreement and the Non-Solicitation Agreement on April 4, 2008. TRO Motion at 14.  Marsh asked the court to enjoin Karasaki from "continuing employment or performing the duties as Chairman and Chief Executive Officer, or other similar position, of AON Corporation's Hawaii office." Id. at 38.

On April 14, 2008, Karasaki filed the Venue Motion, arguing improper venue based on the 2007 Agreement's "provision mandating that any litigation concerning Mr. Karasaki's employment be brought in a New York Court." Venue Motion at 2. Marsh responded by promptly filing its FAC, eliminating all references to the 2007 Agreement and basing its claims wholly on

the 2003 Agreements and Hawaii statutory and common law.  During

a telephone conference, Marsh stated that it was not waiving any

rights under the 2007 Agreement, although it had no present

intent of filing a separate lawsuit in New York under the 2007

Agreement.

Because the parties are governed by all three

agreements, the court cannot ignore the 2007 Agreement.  The

forum selection clause in the 2007 Agreement applies, and this

dispute must be litigated in New York.

III.     LEGAL STANDARD.

A defendant may raise the defense of "improper venue"

and seek dismissal of the case in a motion brought under Rule

12(b)(3).  Such a motion invokes 28 U.S.C. § 1406(a), which

requires a district court "in which is filed a case laying venue

in the wrong division" to dismiss or transfer the case.

28 U.S.C. § 1406(a).

In a Rule(12)(b)(3) motion, unlike a Rule 12(b)(6)

motion to dismiss, the pleadings need not be accepted as true and

the court may consider facts outside the pleadings.  Murphy v.

Schneider National, Inc., 362 F.3d 1133, 1137 (9th Cir. 2003).

The court must, however, view facts in the light most favorable

to the non-moving party and draw all reasonable inferences in

that party's favor.  Id. at 1138-39.

IV.      <u>ANALYSIS.</u>

      A.   The 2007 Agreement is an Integral Part of the
            <u>Parties' Agreement.</u>

Marsh has dropped claims based on the 2007 Agreement in the hope of avoiding the forum selection clause.  Karasaki counters that the clause applies to both the 2007 Agreement and all other employment issues.  Opp'n at 2.

The forum selection clause provides that "any action with respect to this Agreement and the Employee's employment shall be brought exclusively" in the courts of New York.  2007 Agreement ¶ 12.  Karasaki argues that the words "and the Employee's employment" require that all disputes concerning Karasaki's employment be brought in a New York court.  Reply in Support of Motion to Dismiss for Improper Venue (April 17, 2008) ("Reply") at 3.  The use of the conjunctive "and" suggests that a dispute that concerns <u>both</u> the 2007 Agreement <u>and</u> Karasaki's employment must be brought in a New York court.  This court need not decide whether the forum selection clause applies to disputes concerning Karasaki's employment that do not implicate the 2007 Agreement.  A dispute over rights to something Karasaki published while at Marsh, for example, might not implicate the 2007 Agreement.  The court, however, concludes that the 2003 Non-Solicitation Agreement, 2003 Confidentiality Agreement, and the 2007 Agreement form an integrated agreement with respect to the

7

present dispute, and Marsh may not bring its claims solely under the 2003 Agreements.

> 1. The 2003 Agreements Do Not Stand Alone With Respect to the Present Dispute.

Marsh, citing to paragraph 9 of the 2007 Agreement regarding other agreements and obligations, argues that the 2003 Agreements are independent of the 2007 Agreement.  Opp'n at 4-5; see also id. at 6-7.  But paragraph 9 states that there is no waiver or release "of any other more extensive legal or contractual obligations the Employee may owe the Company at any particular time hereafter with regard to the subject matters of Sections 2 to 6."  2007 Agreement ¶ 9 (emphasis added).  The Non-Solicitation Agreement does indeed cover subject matters addressed in Sections 2 to 6 of the 2007 Agreement, but the court does not identify "more extensive" obligations in the Non-Solicitation Agreement than there are in the 2007 Agreement.  In fact, with respect to "the subject matters of Sections 2 and 6," the Non-Solicitation Agreement and the 2007 Agreement are nearly identical.

The court questions whether the "no waiver or release" language of paragraph 9 even applies to the Confidentiality Agreement.  The Confidentiality Agreement does not appear to address directly any of the subject matters in Sections 2 to 6 of the 2007 Agreement.  At most, Section 6 in the 2007 Agreement regarding Conflict of Interest and paragraph 3 in the

8

Confidentiality Agreement regarding Nondisclosure of Confidential Information address similar subjects.  Paragraph 3 of the Confidentiality Agreement, however, is not "more extensive" than Section 6 of the 2007 Agreement.

Because neither of the 2003 Agreements is "more extensive" than the 2007 Agreement on the subject matters contained in Sections 2 to 6 of the 2007 Agreement, the "no waiver or release" language of paragraph 9 of the 2007 Agreement does not appear to permit Marsh to proceed solely under the 2003 Agreements.  See e.g., American Express Bank Ltd. v. Uniroyal, Inc., 164 A.D. 2d 275, 277, 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990), appeal denied, 77 N.Y.2d 807, 572 N.E. 2d 52 (N.Y. 1991) ("Words and phrases are given their plain meaning.  Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement.") (internal citation omitted).

Nor is the court persuaded that Marsh may ignore the 2007 Agreement by relying on the part of paragraph 9 of that agreement that says that Karasaki's obligations "under this Agreement shall be independent of, and unaffected by, and shall not affect, other agreements, if any, binding the Employee." That "independent and unaffected" language goes to Karasaki's obligations.  Here, the court focuses on the parties' mutual obligation to litigate in New York.  That is, Marsh may not

obviate its <u>own</u> obligation to litigate in New York by pointing to <u>Karasaki's</u> "independent and unaffected" obligations.

Significantly, the language of the 2007 Agreement, as contrasted to that of the 2003 Agreements, indicates that the 2007 Agreement imposes obligations on both parties, not just on Karasaki.  The 2003 Agreements, for example, speak only of Karasaki's obligations:  "I understand," "I acknowledge," and "I consent."  <u>See</u> Non-Solicitation Agreement; Confidentiality Agreement.  The 2007 Agreement, while signed only by Karasaki, imposes obligations on both parties: "The parties agree," "Neither the Employee nor the Company," and "The parties waive." 2007 Agreement ¶¶ 8, 9, 12.  The forum selection clause thus binds both parties: "The parties hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in the said court(s)."  <u>Id.</u> ¶ 9; <u>see also</u> <u>Welsbach Electric Corp. v. MasTec North America, Inc.</u>, 7 N.Y.3d 624, 628, 859 N.E.2d 498, 500 (N.Y. 2006) ("A basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent.").

>            2.   Nothing Precludes the Court From Looking At
>                 the 2007 Agreement When Construing the 2003
>                 <u>Agreements.</u>

By dropping any reference to the 2007 Agreement in its FAC, Marsh essentially asks the court to ignore the 2007 Agreement, which is both more extensive and more recent than the

2003 Agreements that are currently being sued upon, in deciding the contractual obligations owed to Marsh by Karasaki.  The court declines to interpret the 2003 Agreements without reference to the 2007 Agreement, given the obvious overlap in subject matter.

No contractual provision bars the court's consideration of the 2007 Agreement in interpreting the 2003 Agreements. Admittedly, paragraph 9 of the 2007 Agreement states that the 2007 Agreement "shall be independent of, and unaffected by, and shall not affect, other agreements."  2007 Agreement ¶ 9.  This language only clarifies that other agreements that cover issues not covered by the 2007 Agreement remain in effect.  This language cannot reasonably be read to exclude consideration of the 2007 Agreement when interpreting previous agreements on the same subject matter.  To do so would essentially negate any new provisions added to the 2007 Agreement that may affect Karasaki's contractual obligations to Marsh.

For example, the Non-Solicitation Agreement forbids Karasaki from soliciting "any employee of the Company who worked in the same business unit or who worked with [Karasaki] directly to terminate his or her employment with the Company."  Non-Solicitation Agreement at 1.  The 2007 Agreement specifies that Karasaki is prohibited from soliciting employees who have come into contact with Karasaki for the last two years of Karasaki's employment at Marsh.  2007 Agreement ¶ 3.  Thus, if the court

relied only on the Non-Solicitation Agreement, the court could find Karasaki in breach even if Karasaki was not in breach under the 2007 Agreement on an identical issue.  Compare Non-Solicitation Agreement at 1 (barring solicitation of current, prospective, and former clients) with 2007 Agreement ¶ 2 (barring non-solicitation of current and prospective clients with whom Karasaki has come into contact in the past two years).  The addition of the more specific language in the 2007 Agreement was clearly meant to clarify and alter Karasaki's obligations to Marsh.  See American Express Bank, 164 A.D. 2d 275, 277, 562 N.Y.S.2d 613, 614 ("A contract should be construed so as to give full meaning and effect to all of its provisions.").  If the court were to ignore the 2007 Agreement, then any new language in the 2007 Agreement on similar issues contained in the 2003 Agreements would be nullified.

Marsh argues that the Non-Solicitation Agreement is not affected by the 2007 Agreement while simultaneously retaining its right to sue under the 2007 Agreement in a separate lawsuit. Marsh thereby asserts a right to split its causes of action. Such an action is barred by the doctrine of res judicata.  See, e.g., Matter of Reilly v. Reid, 45 N.Y.2d 24, 27-29, 379 N.E.2d 172, 175-76  (N.Y. 1978) (concluding that res judicata prohibits splitting a cause of action, and that differences in legal theory or remedy do not create a separate cause of action where the same

foundation of facts serves as a basis for each proceeding); see also O'Brien v. City of Syracuse, 52 N.Y.2d 353, 355, 429 N.E.2d 1158, 1159 (N.Y. 1981) (Under the New York transactional approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.").

The court recognizes that Marsh also asserts a number of claims under Hawaii statutory and common law.  Because those claims are based on the same foundation of facts as Marsh's contract claims, permitting Marsh to proceed with those claims in a separate cause of action would similarly violate the rule against splitting causes of action.  Thus, Marsh cannot proceed with only its common law and statutory claims in this court either.

Because the 2007 Agreement covers the same subject matters as the Non-Solicitation Agreement, the court cannot construe the parties' rights and obligations solely under the Non-Solicitation Agreement.  To do so would be akin to permitting separate litigation under, say, a mortgage and a promissory note, even though both concerned the same property, the same loan transaction, and the same parties.  At this point and for this dispute, three agreements form a unit that cannot be broken up in

the manner Marsh attempts.[1]  See Devos Limited v. RX Recalls, Inc., 2005 WL 4436316 at *2 (N.Y. Sup. Ct. 1990) (applying a forum selection clause contained in a promissory note to a claim based on a purchase agreement because "[t]he promissory notes are part of the overall agreement between the parties.").

        3.   The Forum Selection Clause Applies.

Because the 2003 Agreements and the 2007 Agreement must be construed together, the forum selection clause applies to this case even if Marsh does not invoke the 2007 Agreement.  The 2007 Agreement requires that "any action or proceeding with respect to this Agreement and the Employee's employment shall be brought exclusively" in a New York court.  2007 Agreement ¶ 12 (emphasis added).  The language "with respect to" is broad and encompasses all claims that may fall within the 2007 Agreement.  Cf. Shaw Group Inc. v. Triplefine International Corp., 322 F.3d 115, 121-122 (2d Cir. 2003) (noting the broad scope of a similar provision

_____

[1] In so concluding, the court is not relying on Karasaki's argument that a Hawaii judge should not be called upon to apply New York law.  The choice of law provision applies to all the agreements regardless of whether the forum selection clause applies.  While this court readily recognizes that a New York judge will have more familiarity with New York law than a Hawaii judge does, there is nothing extraordinary about any judge's application of another state's law.  Courts are often called upon to apply the laws of other jurisdictions.  The court similarly does not expect that a New York judge will have any difficulty applying Hawaii law to Marsh's Hawaii common law and statutory law claims.  Karasaki's merging of the argument concerning the choice of law provision with the argument concerning the forum selection provision is unpersuasive.

requiring arbitration when applying New York contract law). Notably, the forum selection clause does not require that a claim "arise" under the 2007 Agreement.  Thus, even though Marsh asserts that it is now bringing claims only under the 2003 Agreements, the forum selection clause applies because the court must refer to the 2007 Agreement in interpreting the 2003 Agreements.

Marsh also argues that the forum selection clause of the 2007 Agreement is inapplicable to the 2003 Agreements.  Opp'n at 7.  The court need not decide whether the forum selection clause would apply to all disputes under the 2003 Agreements. The clause clearly applies in this particular situation.  The cases Marsh relies on for the contrary proposition are distinguishable and do not hold otherwise.

For example, Marsh cites U.S. Small Business Admin. v. Chimicles, 447 F.3d 207 (3d Cir. 2006), in which the court declined to apply an arbitration clause contained in a partnership agreement to a related subscription agreement.  The court noted that the partnership agreement, which contained the arbitration clause, was entered into between the general partner and the private limited partners while, in the case before it, a receiver was seeking to enforce the subscription agreement against a limited partner.  The court concluded that, even if the arbitration clause was incorporated into the subscription

15

agreement, the arbitration provision did not apply to a third party who had never agreed to the arbitration clause.  See id. at 210-11.

Marsh's reliance on Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc., 502 F. Supp. 2d 531 (W.D. Tex. 2007), is similarly misplaced.  In Seeberger, the court concluded that a forum selection clause contained in an agreement did not warrant transfer of venue to the designated courts because the agreement did not apply to the majority of the plaintiff's claims.  The plaintiff claimed a right to market and license computer software owned by the defendant.  The agreement in issue was a confidentiality agreement that governed the information disclosed by the defendant to the plaintiff, which the court concluded was unrelated to the plaintiff's licensing claims.

Karasaki is not seeking to enforce the forum selection clause against a third party.  Nor are Marsh's claims unrelated to the 2007 Agreement containing the forum selection clause. Because the court must look to the 2007 Agreement to interpret the earlier 2003 Agreements, the forum selection clause applies.

B.   The Forum Selection Clause is Enforceable.

Marsh does not challenge the forum selection clause as enforceable, arguing only that it does not apply to the 2003 Agreements.  Having determined that the forum selection clause

16

applies under the circumstances presented here, the court turns to whether the forum selection clause is enforceable.  Because the clause is both valid and mandatory, it is indeed enforceable.

### 1.   The Forum Selection Clause is Valid.

Federal law controls the enforcement of forum selection clauses in diversity cases.  Manette-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988).  A forum selection clause is presumptively valid and should be enforced "absent a strong showing that it should be set aside."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); see also Spradlin v. Lear Siegler Management Services Co., 926 F. 2d 865, 868 (9th Cir. 1991) (concluding that the Bremen analysis applies to employment contracts).  "The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'"  Murphy, 362 F.3d at 1140 (quoting Bremen, 407 U.S. at 15.).

A forum selection clauses is unenforceable when: (1) the clause was included as a result of fraud or overreaching; (2) the party seeking to avoid the clause would "effectively be deprived of his day in court" if the clause were enforced; and (3) if enforcement would contravene a strong public policy in the forum in which the suit is brought.  Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing Bremen, 407

U.S. at 12-13, 15).  In the context of an employment contract, and in an appropriate case, a court may also look at the following factors:

> (1) any power differentials which may exist between the two parties to the contract, (2) the educational background of the party challenging the clause, (3) the business expertise of the party challenging the clause, and (4) the financial ability to bear [the] costs and inconvenience of litigating in the forum selected by the contract.

Murphy, 362 F.3d at 1140-41 (quoting Spradlin, 926 F.2d at 868-69) (internal quotations omitted); see also Talatala v. Nippon Yusen Kaisha Corp., 974 F. Supp. 1321, 1325 (D. Haw. 1997).

Marsh not only drafted the forum selection clause, it also required that Karasaki sign the 2007 Agreement containing the clause.  Venue Motion at 7.  Marsh has its principal place of business in New York, the selected forum.  Marsh cannot escape its own obligation to litigate in a New York court by manipulating its claims.  Under these circumstances, the court concludes that enforcement of the clause is reasonable and just.

## 2.    The Forum Selection Clause is Mandatory.

Even if a forum selection clause is valid, the court must also determine whether the forum selection clause is mandatory or permissive.  See Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 763 (9th Cir. 1989); see also John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc., 22 F.3d 51, 53 (2d Cir. 1994).  In Hunt Wesson Foods, Inc.

v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987), the Ninth
Circuit said, "[F]orum selection clauses have been held to
require litigation in a particular court [when] the language of
the clauses clearly required <u>exclusive</u> jurisdiction." <u>See</u> <u>also</u>
<u>Docksider</u>, 875 F.2d at 764 (concluding that a forum selection
clause is enforceable when mandatory language "makes clear" that
venue "lies exclusively in the designated county"); <u>Boutari</u>, 22
F.3d at 52 (noting the general rule that forum selection clauses
will only be enforced when jurisdiction is exclusive).

In <u>Docksider</u>, the contract at issue provided that the
parties agreed to the jurisdiction of the courts of the State of
Virginia and further stated that "[v]enue of any action brought
hereunder shall be deemed to be in Glouchester County, Virginia."
<u>Docksider</u>, 875 F.2d at 763.  The Ninth Circuit concluded that the
forum selection clause was enforceable because mandatory language
specified the venue and the language of the clause indicated that
jurisdiction was exclusive.  <u>Id.</u> at 764; <u>see</u> <u>also</u> <u>Bremen</u>, 407
U.S. at 2, 20 (concluding that the forum selection clause was
mandatory when it provided that "[a]ny dispute arising must be
treated before the London Court of Justice"); <u>Pelleport</u>
<u>Investors, Inc. v. Budco Quality Theatres, Inc.</u>, 741 F.2d 273,
275 (9th Cir. 1984) (concluding that forum selection clause was
mandatory when the clause provided that "any and all disputes
arising out of or in connection with this Agreement shall be

litigated only in the Superior Court for Los Angeles, California
(and in no other)"); Talatala, 974 F. Supp. at 1325 (holding that
the forum selection clause was mandatory when the contract stated
that "any action thereunder shall be brought before the Tokyo
District Court in Japan").

          In contrast, the court in Hunt concluded a forum
selection clause was permissive when the contract provided that
"The courts of California, County of Orange, shall have
jurisdiction over the parties in any action at law relating to
the subject matter or the interpretation of this contract."
Hunt, 817 F.2d at 76.  The court noted that although the clause
indicated that the parties consented to the jurisdiction of the
Orange County courts, the clause said nothing about the courts
having exclusive jurisdiction.  Id. at 77.  Similarly, in
Boutari, the Second Circuit, sitting in diversity, concluded that
the forum selection clause, which provided that "[a]ny dispute
arising between the parties hereunder shall come within the
jurisdiction of the competent Greek courts," was not enforceable
because it did not mandate exclusive jurisdiction in the Greek
courts.  Boutari, 22 F.3d at 52.

          The forum selection clause in the 2007 Agreement
contains mandatory language, specifying that "any action or
proceeding with respect to this Agreement and the Employee's
employment shall be brought exclusively" in the courts of New

20

York.  2007 Agreement ¶ 12 (emphasis added).  In addition, the clause contains language waiving any objections that either party may have in the laying venue in the designated courts.  See id. Accordingly, the forum selection clause is mandatory.

>    C.    Dismissal, Rather than Transfer, Is Appropriate Here.

This court has the discretion either to dismiss or to transfer this case, given the forum selection clause.  See Costlow v. Weeks, 790 F.2d 1486, 1487 (9th Cir. 1986) (concluding that the district court was within its discretion to dismiss rather than transfer a case when the movant failed to make a showing that transfer was in "the interest of justice"); see also Big Island Yacht Sales, Inc. v. Dowty, 848 F. Supp. 131, 134 (D. Haw. 1993) ("[Under 28 U.S.C. § 1406(a), the] decision whether to dismiss or transfer the actions rests within the discretion of the trial court.").

Dismissal is appropriate here, because the forum selection clause provides the option of selecting either a New York state court or the United States District Court for the Southern District of New York.  To preserve that option for the parties, this court dismisses this action, leaving it to them to select the precise court in New York in which to revive this dispute.

D.   <u>Sanctions Are Not Warranted.</u>

Karasaki asks the court to sanction Marsh under 28 U.S.C. § 1927, which provides that any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Karasaki argues that sanctions are warranted because Marsh filed a Complaint in the wrong court, in spite of a forum selection clause.

The court declines to issue sanctions. Marsh, seeking immediate relief, could have reasonably believed that filing suit in this court would be more convenient for Karasaki who works and lives in Hawaii, and that laying venue in this district would have obviated any objections by Karasaki. Karasaki knew from correspondence that Marsh was concerned about his actions. When suit was filed, Karasaki could certainly have called or written Marsh to object to litigation in Hawaii. Instead, Karasaki took on the considerably more onerous job of preparing a motion to dismiss. Whether a call or letter would have been futile before Marsh filed its TRO Motion is not now determinable from the record. Marsh's present attempt to remain in this court may well be a product of the work Marsh had already done on the case by the time Karasaki objected to the forum.

Karasaki argues that he lacked the time to comply with the requirements of Rule 11 of the Federal Rules of Civil Procedure, but he can hardly claim that he lacked the time to call or write a letter.  Moreover, as the sanction request has no urgency to it, the court concludes that the failure to comply with Rule 11 is not excused.  No sanctions are awarded against Marsh.

V.      CONCLUSION.

For the foregoing reasons, Karasaki's motion to dismiss is granted without prejudice to the refiling of claims in a court in New York.  The court declines to sanction Marsh.

The Clerk of Court is directed to terminate the TRO Motion, to enter judgment for Karasaki, and to close this case.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 22, 2008.





                                    /s/ Susan Oki Mollway
                                    Susan Oki Mollway
                                    United States District Judge


**Marsh USA, Inc., and Marsh & McLennan Companies, Inc. v. Chad W. Karasaki**, Civ. No. 08-00149 SOM/KSC; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS.